No. 2653

Second Circuit

CARLTON v. DURR ET AL.

(November 8, 1928. Opinion and Decree.)

Boone and Boone, of Many, attorneys for plaintiff, appellee.

James W. Jones, Jr., of Natchitoches, attorney for defendants, appellants.

ODOM, J. Arthur H. Durr, the defendant in the present suit, brought suit in the Parish of Sabine against J. W. Folks to recover an amount alleged to be due on promissory notes. He alleged that his debtor resided permanently in the State of Texas, but that he owned 25 acres of land in Sabine Parish. He procured the issuance of a writ of attachment and, under said writ, the Sheriff attached the land alleged to belong to Folks on February 25, 1925. The suit of Durr against J. W. Folks was carried to judgment on May 12, following, the judgment recognizing the attachment and ordering the property sold to satisfy plaintiff's claim.

The property attached appeared on the records in Sabine Parish in the name of "Mrs. J. W. Folks, wife of J. W. Folks."

On May 4, 1925, more than two months after the property was attached, and while it remained under attachment, Mrs. Folks, aided and authorized by her husband, J. W. Folks, by notarial act, sold said property to Sam Lewing, and Lewing, on the same day, sold it to C. C. Carlton, plaintiff in this case.

After Arthur H. Durr, plaintiff in the original suit against J. W. Folks, obtained judgment on May 12, 1925, a writ of fi. fa. was issued under the judgment, and, under said writ, the Sheriff seized and advertised

the property for sale to satisfy the judgment. Carlton, the plaintiff in this suit, then filed suit against Durr and the Sheriff, setting up his title to said land, alleging that he had purchased the same from Mrs. J. W. Folks, who owned it as her separate paraphernal property and that it was not the property of J. W. Folks, nor of the community which existed between him and his said wife, and he asked that the said Durr and the Sheriff be enjoined from proceeding further with the sale and that his title to the property be recognized.

The defendant, Durr, in answer, set up as a defense that whereas the property stood on the records in the name of Mrs. J. W. Folks, it was not in fact her separate property, but belonged to the community which existed between her and her husband, J. W. Folks, and was, therefore, subject to the community debts. The lower court found for the plaintiff, recognizing his title and ordered the preliminary writ of injunction perpetuated and the property released. The defendant, Durr, has appealed from that judgment.

## OPINION

The only question presented is whether the property in controversy belonged to the community which admittedly existed between J. W. Folks and his wife, or whether the same was her separate, paraphernal property. If it was community property, it was, of course, subject to the community debts, and Durr, being a creditor of the community, was within his rights in having it seized in order to have it subjected to his claim.

All property purchased during marriage, whether in the name of the wife or the husband, or both, falls into the community.

Civil Code, Article 2400; Succession of Planchet, 29 La. Ann. 520; Davidson vs. Stuart, 10 La. Rep. 146; Gogreve vs. Dehon et al., 41 La. Ann. 244, 6 So. 31; Cosgrove vs. Creditors, 41 La. Ann. 274, 6 So. 585; Succession of Muller, 106 La. Rep. 89, 30 So. 329; Burns vs. Thompson, 39 La. Ann. 377, 1 So. 913; Succession of Manning vs. Burke, 107 La. Rep. 459, 31 So. 862.

The property in controversy was purchased in the name of Mrs. J. W. Folks, in 1921, during the life of her husband. At that time, she and her husband had been living together about twenty-three years under the community regime. There is nothing in the deed which suggests that it was to be her separate property, or that the price was paid with her separate, paraphernal funds. The vendor was C. F. Lewing and the deed recites that "he does by these presents grant, bargain, sell, convey and deliver * * * unto Mrs. J. W. Folks, wife of J. W. Folks, the following described property * * * for the consideration of $1,000.00, cash in hand paid, the receipt of which is hereby acknowledged."

The deed is signed by Lewing, but not by the vendee nor by anyone representing her.

"All property purchased during the existence of the community, in the name of the wife, is presumed to belong to the community, and, in order to rebut this presumption, the wife must show with legal certainty; First, that the price was her paraphernal funds; Second, that it was administered by her; Third, that it was invested by her."

See Otis et al. vs. Texas Company et al., 153 La. Rep. 384, 96 So. 1, and a long list of authorities there cited.

In some of the earlier cases, the Court went so far as to hold that in order to invest the wife must have the administra-

tion of paraphernal effects and prove the investment of the identical money in order to keep the effects out of the community.

Shaw vs. Hill, 20 La. Ann. 531, 96 Am. Dec. 420; Davidson vs. Stuart, 10 La. 148; Bolck vs. Melville, 10 La. Ann. 784; Dominguez vs. Lee et al., 17 La. Rep. 295.

The plaintiff, who holds under Mrs. Folks and who seeks to arrest the sale of the land in question, carried the burden of rebutting the presumption that it belonged to the community. This he failed to do.

The testimony shows that, subsequent to the marriage of Mr. and Mrs. Folks, Mrs. Folks inherited from her deceased parents a one-fifth interest in some land, about ten head of cattle and a bunch of hogs. She sold her interest in the land for $220.00, which went into the hands of her husband, and the two together "consumed it." The husband took possession of the cattle, and traded one of the cows and a calf for an old wagon, traded some of the cows for mules or horses, and possibly sold some of them. He was referred to by one of the witnesses as a "horse trader," and it seems that he continued to trade horses for cows and cows for horses until 1914, and probably later. He had at one time as many as six horses or mules and a wagon. What became of the hogs, the witness did not know.

In 1914, a tract of seventy acres of land was acquired in the name of John W. Folks and his wife, Mrs. Clorena R. Folks. The consideration expressed in the deed is $800.00 cash, but one of the witnesses stated that he was present when the sale was made and that Mr. and Mrs. Folks traded teams for the land. They kept this seventy acres of land until December 9, 1921, when they sold it, both signing the deed, to W. P. Lewing for a stipulated consideration of $2,000.00. But the witnesses say, and it is conceded, that the real consideration which they received consisted of some teams and 25 acres of land, the 25 acres of land having been conveyed in a separate deed to Mrs. J. W. Folks by C. F. Lewing, the purchaser of the 70-acre tract. This 25-acre tract is the land in controversy in the present suit.

The testimony makes it perfectly clear that not only did Mrs. Folks' husband take charge of and spend the money which his wife received for the land which was inherited, but that he also took charge of the cattle and the hogs and sold or traded them as he saw fit; at no time did Mrs. Folks, during the twenty-three years from the date of her marriage up to 1921, when the land in controversy was acquired, have the control or administration of any of the property which she inherited. She permitted her husband to take charge of and administer it as he pleased. At the time the land in controversy was acquired in 1921, Mrs. Folks did not possess any of the money or any of the property which she had inherited. Her money had been spent or consumed by her and her husband, her live stock had been sold or traded.

It is contended by counsel for plaintiff that this 25 acres of land was placed in the wife's name in order to reimburse her for her paraphernal property which her husband had administered and disposed of, and that an agreement to that effect was made between the husband and wife. Conceding that to be true, the land did not become her separate property. Contracts, other than those specified in Article 2446 of the Civil Code, are void.

Civil Code, Article 1790; Carroll vs. Cockerham, 38 La. Ann. 813; Burns vs. Thompson, 39 La. Ann. 378, 1 So. 913; Compton vs. Sandford, 26 La. Ann. 237.

Act 219 of 1920, in effect at the time this property was acquired, removed a great many of the incapacities under which married women had theretofore labored, but it specifically provided that "nothing herein contained shall be deemed or construed to authorize a married woman to contract with her husband."

J. W. Folks received some money and property belonging to his wife and was indebted to her to some extent. He could have made a dation en paiement in satisfaction of her claim by pursuing the methods prescribed by law, but that was not done. The property was put in the name of the wife during the existence of the community and it is not shown that it was bought by the wife with separate funds of which she had had the administration. Our attention is called to Act 186 of 1920, which provides that when the community property stands in the name of the wife, it cannot be sold or mortgaged without the consent of the wife, and it is argued that property standing in the name of the wife cannot be seized and sold for the debts of the community, or for the debts of her husband. Community property, under the law and jurisprudence, may always be subjected to community debts.

For the reasons assigned, it is therefore ordered, adjudged and decreed that the judgment appealed from be reversed; and it is now ordered that the preliminary writ of injunction issued herein be dissolved and set aside, and that plaintiff's demands be rejected and his suit dismissed, at his cost in both courts.